C.Y. BENAVIDES, Jr., et al.,
Appellants,

v.

Peter G. LEE, Appellee.

No. 04–82–00543–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 21, 1983.

Rehearing Denied Feb. 2, 1984.

W.W. Allen, Francis P. Maher, Laredo, for appellants.

Peter G. Lee, David H. Donaldson, Jr., Austin, for appellee.

Before BUTTS, CANTU and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from the granting of a writ of mandamus under the Texas Open Records Act, TEX.REV.CIV.STAT.ANN. art. 6252–17a (Vernon Supp.1982–1983). The 49th District Court of Webb County ordered appellant, a member of the Webb County Juvenile Board, to release to appellee those parts of resumes containing qualifications of applicants for the position of chief juvenile probation officer. Appellant in his single point of error argues that the Juvenile Board is an extension of the judiciary; therefore, the Board does not come within the definition of "governmental body" and is not subject to the Open Records Act. TEX.REV.CIV.STAT.ANN. art. 6252–17a, § 2(1)(G).[1]

As both parties agree, unless included in the judiciary exception, the Juvenile Board is a "governmental body" subject to the Open Records Act, art. 6252–17a, § 2(1)(F) since the Board receives funding from the Commissioners Court, TEX.REV.CIV. STAT.ANN. art. 5139JJJ, § 7 (Vernon Supp.1971–82).

Appellant suggests that the Board is an extension of the judiciary because the duties of the juvenile probation officer for which that officer answers directly to the Board are entwined with the functions of the judiciary. Furthermore, all the Board members are members of the judiciary except for the county judge who has both judicial and non-judicial functions.

Analysis should focus not on the functions of the probation officer but on the Board itself and the kind of information requested. Since the applicant information was collected and used by the Board, the nature of the Board in part determines the applicability of the Open Records Act to Board records. The Board is not a court. A separate entity, the juvenile court, not the Board, exists to adjudicate matters concerning juveniles. Nor is the Board directly controlled or supervised by a court.

Moreover, simply because the Legislature chose judges as Board members, art. 5139JJJ, § 1, does not in itself indicate they perform on the Board as members of the judiciary. Board members are paid a sepa-

1. In this case, the Board did not ask for an Attorney General opinion on the applicability of a § 3 exception for Board records. Art. 6252– 17a, § 7. Instead, the Board seeks exclusion under the definitional section, § 2(1)(G).

rate salary for their Board work in addition to their salaries as judges. Furthermore, classification of the Board as judicial or not depends on the functions of the Board, not on members' service elsewhere in government.[2] The Board's role as described in art. 5139JJJ is exclusively administrative:

Sec. 2. The Webb County Juvenile Board may:

(a) Appoint a qualified person, trained or experienced in the field of juvenile and parental counseling, as juvenile probation officer;

(b) suspend or remove any employee at any time for good cause;

(c) require any person employed by the board to enter into a bond, payable to the board, conditioned on the faithful performance of his duties, with the premium for the bond payable by the board;

(d) authorize the use of foster homes for the temporary care of children charged with engaging in delinquent conduct or children deemed to be in need of supervision; and

(e) accept gifts or grants of real or personal property, subject to the terms and conditions on which they are made, for the use and benefit of the juvenile justice system.

Sec. 3. The Webb County Juvenile Board shall:

(a) prescribe the duties and conditions of employment of its employees;

(b) control and supervise all homes, schools, farms, and other institutions or places of housing maintained and used chiefly by the county for the training, education, detention, support, or correction of juveniles;

(c) appoint superintendents of institutions maintained and used chiefly by the county for the training, education, detention, support, or correction of juveniles;

(d) designate the juvenile court in Webb County in accordance with Section 51.-04, Family Code; and

(e) submit an annual proposed budget to the Webb County Commissioners Court.

The only functions directly connected with the courts are the Board's power to designate the juvenile court in § 3(d) and to appoint a probation officer who in part serves the juvenile court, § 2(a).

The district judge in the mandamus proceedings below correctly delineated his job as Board member: "No, the Juvenile Board is not an extension of the judiciary. When I sit on that Board at no time do I sit as a judicial judge and make judicial decisions; they are all administrative decisions that I make." Finally, selection of a chief probation officer is simply part of the Board's administration of the juvenile probation system, not a judicial act by a judicial body.

The judiciary exception, § 2(1)(G), is important to safeguard judicial proceedings and maintain the independence of the judicial branch of government, preserving statutory and case law already governing access to judicial records. But it must not be extended to every governmental entity having any connection with the judiciary. The intent of the Open Records Act must not be circumvented by an unnecessarily broad reading of the judiciary exclusion.

Declaration of policy

Section 1. Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that govern-

---

**2.** *Cf.* Tex. Att'y Gen. ORD–204 (1978) which dealt with the applicability of the Texas Open Records Act to a county judge in light of the dual nature of the office—some powers being purely judicial, others being executive and ministerial:

We do not believe that there is an irreconcilable conflict within the definition of "governmental body" as to its application to the county judge as a part of the commissioners court, and its exclusion of the judiciary from the

Act. We believe that information held by the county judge is subject to the Open Records Act except to the extent it pertains to cases and proceedings before the county court. This construction of the Act is consistent with both the requirement that it be liberally construed in favor of granting any request for information and the exclusion of the judiciary from the Act.

*Id.* at 2.

ment is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of Texas that all persons are, unless otherwise expressly provided by law, at all times entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. To that end, the provisions of this Act shall be liberally construed with the view of carrying out the above declaration of public policy.

TEX.REV.CIV.STAT.ANN. art. 6252–17a (Vernon Supp.1982–1983).

Instead of interfering with judicial affairs, public scrutiny here of probation officer applicant qualifications works toward proper selection considerations by the Board and, hence, toward employment of qualified officers.

The judgment of the trial court is affirmed.